IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | Chapter 13 |
| MARILYN S. WEISS, | * | Case No.: 1-06-bk-02121MDF |
|     Debtor | * | |
| | * | |
| JAMBETH INVESTMENTS, LLC, | * | |
|     Objectant | * | |
| | * | |
| v. | * | |
| | * | |
| MARILYN S. WEISS, | * | |
|     Respondent | * | |
| | * | |

**OPINION**

Before the Court is a motion for summary judgment filed by Jambeth Investments ("Jambeth") on its objection to confirmation of the chapter 13 plan filed by Marilyn S. Weiss ("Debtor"). For the reasons set forth below, the Motion is granted.

**Procedural and Factual History**

On September 27, 2006, Debtor filed a chapter 13 petition. On schedule "A," filed in support of the petition, Debtor reported that she owned real property at 160 S. Harlan Street, York, Pennsylvania ("the York property") with a value of $100,000.00. On schedule "D," she stated that the York property was subject to the secured claim of Sovereign Bank in the amount of $20,189.00 as well as three other claims totaling $7,822.34.[1] On schedule "F," Debtor listed Jambeth as holding a disputed, unsecured claim in the amount of $8,495.00.[2]

---

[1] Presumably these liens attached to the York property, although Debtor did not include them as secured claims on schedule "A."

[2] Jambeth did not file a proof of claim in the case.

1

On October 25, 2006, Debtor filed her chapter 13 plan. The plan was to be funded up to $36,440.00 through payments of $65.00 per month for fifty-nine (59) months. Proceeds from the refinancing of the York property would be used to make the final payment and complete the plan. Debtor proposed to pay secured debt totaling $11,275.00 and stated that after payment of secured and priority claims, there would be no funds remaining to pay unsecured creditors. On October 27, 2006, Jambeth filed an objection to Debtor's plan because its claim was being treated as unsecured rather than secured. On November 16, 2006, Debtor filed an amended plan, which provided that:

> The following secured claims will be paid as follows: (1) Jambeth Investments, which holds a junior lien against the real estate by virtue of an Agreement filed of record, shall be paid $8,493.20 . . . Upon payment of $8,493.20, Jambeth shall satisfy its lien of record.

On November 27, 2006, Jambeth filed the instant objection to the amended plan stating that: (1) the value of Jambeth's secured claim was in excess of the amount Debtor proposed to pay through the plan, and (2) the plan proposed to modify the terms of Jambeth's lien in violation of 11 U.S.C. § 1322(b)(2).

Jambeth's lien on the York Property was acquired in settlement of a title dispute between the parties. Debtor was the record owner of the York property when it was sold to Jambeth at a tax sale on September 27, 2003 for $77,000.00. Debtor later objected to the sale on procedural grounds. The parties resolved the objection by executing an agreement (the "Agreement"), which was recorded in the office of the York County Recorder of Deeds on November 19, 2003. Among other things, the Agreement required Debtor to execute a listing agreement for the sale of the house with a certain real estate agent. When Debtor failed to list the property, Jambeth filed suit for specific performance in state court. In an opinion filed on December 13, 2005, the state

2

court judge denied Jambeth's request for specific performance, finding that the recording of the Agreement created a mortgage which provided Jambeth with an adequate remedy at law. The Agreement contained the following relevant terms:

> 1. The parties agree to cancel the tax sale. All of Jambeth's purchase money, transfer taxes, etc. will be returned to it except for that portion representing the taxes ($8,493.20).
>
> 2. Jambeth agrees to pay the outstanding balance due the tax claim bureau of $8,493.20, as indicated on Exhibit B attached hereto, on or before November 30, 2003.
>
> 3. That immediately upon the execution of this agreement by both parties, the [York] property . . . shall be listed for sale with ColdwellBanker Bob Yost Realty . . . .
>
> ***
>
> 5. That the proceeds of the sale shall be divided in the following manner:
>
>> a) Jambeth shall be paid all of its out of pocket expenses first, including but not limited to those monies that may be advanced for repairs to the property and the sum of $8,493.20 that is presently being paid or retained to or by the Tax Claim Bureau, and any monies that Jambeth paid to the Tax Claim Bureau that was (sic) not previously reimbursed to Jambeth, and any other reimbursement monies.
>>
>> b) The balance of the proceeds shall be divided equally between Jambeth and Weiss.
>>
>> c) Weiss shall pay off all outstanding liens and judgements of record, mortgage(s) and all other taxes not yet forwarded to the tax claim bureau from her share of her share (sic) of the proceeds.
>>
>> d) Weiss shall pay all outstanding sewer and water bills from her share of the proceeds.
>
> 6. That this agreement shall be recorded in the office of [the] Recorder of Deeds for York County, Pennsylvania and shall be a lien and/or a mortgage against the property.

3

Based upon the provisions of the Agreement, on December 14, 2006, Jambeth moved for summary judgment requesting the Court to sustain its objection to Debtor's plan. Briefs have been filed by both parties, and the matter is ready for decision.[3]

## Discussion

An order granting summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In response to a motion for summary judgment, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)). *Blair v. Scott Specialty Gases* 283 F.3d 595, 603 (3d Cir. 2002). "There must be sufficient evidence for a jury to return a verdict in favor of the non-moving party; if the evidence is merely colorable or not significantly probative, summary judgment should be granted." *Armbruster v. Unisys Corp.,* 32 F.3d 768, 777 (3d Cir.1994); *International Union, United Auto., Aerospace & Agr. Implement Workers of America, U.A.W. v. Skinner Engine Co.,* 188 F.3d 130, 137 (3d Cir. 1999).

As indicated above, Jambeth asserts that it is entitled to judgment as a matter of law on its objection to Debtor's plan because the plan fails to provide for payment in full of Jambeth's secured claim as required by 11 U.S.C. § 1325(a)(5). Debtor counters that summary judgment is

---

[3] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A),(K) and (O).

not warranted because the amount of Jambeth's claim is indefinite. Jambeth's claim is unliquidated because the Agreement provides that Jambeth will receive one-half of the proceeds of the sale of the York property, which, at the date of the hearing, had not been sold. Until the value of the York property is determined, Debtor argues, the precise amount of Jambeth's claim cannot be ascertained, precluding summary judgment in Jambeth's favor.

Debtor's argument that summary judgment is barred because the value of Jambeth's claim is not definite is without merit. Bankruptcy courts routinely determine the value of secured claims under 11 U.S.C. § 506(a) in the absence of an actual sale. *See e.g. Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879 (1997). In the instant case, Debtor's own schedules provide all the information that is needed to conclude Jambeth's objection must be sustained. Debtor's statement of the value in schedule "A" is a judicial admission that the York property is worth $100,000.00. *See Larson v. Groos Bank, N.A.*, 204 B.R. 500, 502 (W.D. Tex. 1996) (information provided in a debtor's bankruptcy schedules and statements, which are executed under penalty of perjury, may be considered judicial admissions); *In re Garberg*, 2006 WL 1997415 (Bankr. E.D. Pa.). *See also In re Musgrove,* 187 B.R. 808 (Bankr.N.D.Ga.1995); *In re Leonard*, 151 B.R. 639 (Bankr. N.D.N.Y. 1992).

With the value of the York property having been set at $100,000.00, it is clear that the plan fails to the meet the requirements of 11 U.S.C. § 1325(a)(5)(B)(ii). Debtor's plan provides for payment of $8,493.20 in satisfaction of Jambeth's claim. However, because the state court has determined that Jambeth's claim is secured by the York property, Debtor's residence, Jambeth must be paid the full amount of its allowed claim. The Agreement provides that Jambeth is entitled to be reimbursed for out-of-pocket expenses, including the $8,493.20 paid to the Tax

5

Claim Bureau, before the proceeds of any sale are divided between Debtor and Jambeth. Further, under the terms of paragraphs 5(c) and 5(d) of the Agreement, all of the liens and judgments on the York property (other than Jambeth's lien) must be paid from Debtor's share of the sale proceeds. Assuming the value of the York property is $100,000.00, after deducting estimated costs of sale of 10% and reimbursing Jambeth for the tax claim paid of $8,493.20, there remains approximately $81,500.00 to be distributed equally between the parties. Therefore, there is approximately $40,750.00, in addition to the amounts to be distributed as reimbursement for payment of the tax claim, available for distribution in satisfaction of Jambeth's claim. Because the state court did not cap the value to be paid to Jambeth, one-half of the equity after the payment of costs of sale and reimbursement of Jambeth's expenses defines the value of Jambeth's claim without the necessity of performing further computations. Debtor's proposed payment of $8,493.20 clearly is inadequate. Accordingly, the objection must be sustained.

An Order will be entered granting Jambeth's motion for summary judgment.

By the Court,

*Mary D. France*
Bankruptcy Judge

Date: March 30, 2007

*This document is electronically signed and filed on the same date.*